**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JEFFERY LEE MARTIN                                    CIVIL ACTION NO. 21-0585

VERSUS                                                          JUDGE S. MAURICE HICKS, JR.

AFFORDABLE CARE, LLC, ET AL.              MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM RULING**

Before the Court are two Motions for Summary Judgment. <u>See</u> Record Documents 44 and 45. The first is a Motion for Partial Summary Judgment (Record Document 44) filed by Defendants Affordable Care, LLC ("Affordable") and Thomas Kennedy, DDS of Louisiana II, A Professional Dental LLC ("Kennedy PDLLC") (collectively referred to as "Defendants") seeking partial summary judgment that (1) the Prime Lease is still ongoing and has not been breached or terminated, (2) the Sublease has been terminated and Plaintiff has no right to continue possessing the Premises and Kennedy PDLLC's equipment and fixtures, and (3) that Defendants have the right to possess the Premises, equipment, and fixtures. <u>See</u> Record Document 44. Plaintiff Jeffery Lee Martin, DDS, A Professional Dental Corporation ("Martin PDC" or "Plaintiff")[1] and Third-Party Defendant Crimson Tide Investments, LLC ("Crimson Tide") opposed the motion. <u>See</u> Record Document 47. Defendants replied. For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

The second is a Motion for Summary Judgment (Record Document 45) filed by Martin PDC seeking summary judgment in its favor on all claims brought by Plaintiff and

---

[1] For purposes of this ruling, any reference to Dr. Jefferey Lee Martin in his individual capacity will be referenced as "Dr. Martin" to delineate between Dr. Martin's dentistry practice (Martin PDC) and Dr. Martin himself.

all claims filed by Defendants in their Answer, Affirmative Defenses, Counterclaim, Third Party Demand, and Request for Trial by Jury (Record Document 6). Defendants opposed the motion, citing largely the same arguments raised in the aforementioned Motion for Partial Summary Judgment, but also addressing the new arguments raised by Plaintiff. See Record Document 49. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter centers around a sublease executed between Martin PDC and Affordable. Martin PDC became affiliated with Affordable's predecessor-in-interest, Affordable, Inc. ("Affordable, Inc.") in 2000. See Record Document 45-1 at 6. Affordable is a dental support organization that provides non-clinical business support services to dentists and assists dentists in establishing their dental practice. See Record Document 44-1 at 4.  Affordable leased –  from a third party unrelated to the instant suit – a dental office located at 416 Ashley Ridge Blvd., Shreveport, Louisiana, 71106 ("the Premises"), pursuant to a Lease dated August 5, 2002 (the "Prime Lease"), as amended by Lease Addendum dated June 5, 2003, Lease Amendment and Assignment dated November 29, 2007, Lease Amendment dated September 1, 2008, and Lease Amendment dated March 16, 2020. See Record Document 44-1 at 4. The current term of the Prime Lease is set to expire on August 31, 2025, with one option to extend the Lease for an additional five-year period until August 21, 2030. See id. According to the Prime Lease, Affordable has the right to use and enjoy the Premises so long as Affordable complies with the Prime Lease and is not in default thereunder. See Record Document 6-1 at 11; see also Record Document 44-1 at 4.

According to Plaintiff, when Martin PDC first became affiliated with Affordable, Inc., the rights and obligations between the parties were based on an oral agreement. See Record Document 45-1 at 6. In 2002, the Louisiana State Dentistry Board launched an investigation into Martin PDC claiming that Martin PDC was improperly splitting fees with Affordable, Inc., effectively allowing Affordable, Inc. to unlawfully practice dentistry under its license. See id. at 6-7; see also Record Document 47-1 at 2. The Louisiana State Dentistry Board reached a resolution with Affordable, Inc. and Martin PDC that resulted in three agreements: (1) an Agreement to Provide Management Services ("the MSA"); (2) an Agreement to Provide Dental Laboratory Services ("the ADDL"); and (3) a sublease, in which Affordable, Inc. subleased the Premises to Martin PDC ("the Sublease"). See Record Document 45-1 at 7. These agreements were executed on July 1, 2003. See id.; see also Record Document 44-1 at 4. The MSA contained an arbitration agreement. See Record Document 47-2 at 9. The Sublease, however, lacked any choice of forum clause. See generally Record Document 47-4.

The purpose of the Sublease, according to Defendants, was to provide a dental office and related services pursuant to the MSA. See Record Document 44-1 at 4. The term of the Sublease was one year to be automatically extended for successive one-year terms as long as the MSA was in effect. See Record Document 47-4 at 1. The Sublease contains a provision through which Martin could acquire the Premises or assume the Prime Lease. See id. at 10-11. This provision (hereinafter referred to as "Section 17") provides:

> 17. Option to Acquire Premises or Assume Prime Lease. Tenant may, at its option, acquire and assume Landlord's interest in the Premises (including all equipment and fixtures) upon termination of the Lease, if all of the following conditions are fully satisfied.

(a) No less than sixty (60) days prior to the termination of the Lease, Tenant must deliver to Landlord written notice that Tenant desires to acquire Landlord's interest in the Premises (including all equipment and fixtures); provided, however, if Tenant does not have at least seventy (70) days advance knowledge of the Lease's imminent termination, then Tenant must deliver the above-mentioned notice to Landlord within ten (10) days of receipt of such knowledge.

(b) If Landlord does not own the Premises, fixtures, and/or equipment, but rather leases the Premises, fixtures, and/or equipment from one or more person ("Prime Lessors"), then prior to the termination of the Lease the Tenant shall cause all Prime Lessors to execute such documents as deemed necessary or prudent by Landlord to (i) release Landlord from any obligation to the Prime Lessor from and following the termination of the Lease and (ii) permit assignment of Landlord's leasehold interest in the Premises, fixtures, and/or equipment to Tenant.

(c) Upon termination of the Lease, Tenant and Landlord must execute such documents as deemed necessary or prudent by Landlord to release each party from any obligation to the other party from and following the termination of the lease.

(d) Upon termination of the Lease, Tenant must pay to Landlord, in cash or certified funds, the sum of the following: (i) the fair market value siting and development services related to the Premises provide by Landlord that have not been paid by Tenant, which value is hereby agreed in good faith to be $50,000, plus (ii) the greater of the fair market value or book value of the Landlord's interest in the Premises (including fixtures) (but in no event greater than the acquisition costs), plus (iii) the greater of the fair market value or book value (but in no event greater than the acquisition cots) of the Landlord's interest in the equipment located at the Premises. An appraiser selected by Landlord shall determine fair market value, and Tenant shall reimburse Landlord for such appraiser's costs.

If all of the foregoing conditions are fully satisfied, then, upon termination of the lease, Landlord shall convey Landlord's interest (whether leasehold or ownership) in the Premises and all equipment and fixtures to Tenant, and Landlord shall execute such documents as deemed necessary or prudent by Landlord to perfect such conveyance. Such conveyance shall be as-is, where-is, and free and clear of any mortgage previously granted by Landlord.

Id. at 11 (cleaned up).

It appears that the parties operated amicably pursuant to these agreements (the MSA, the ADDL, and the Sublease) until August 2020. On August 31, 2020, Dr. Martin, through his entity Crimson Tide, purchased the Premises from Affordable's landlord. See

Record Document 44-2. Dr. Martin is the sole member of Crimson Tide. See Record Document 45-1 at 11. That same day (August 31, 2020), Martin PDC sent notice to Affordable of its intent to invoke the option in Section 17 to acquire Affordable's interest in the Sublease. See id. at 9. Defendants state that on October 20, 2020, Dr. Martin advised Affordable that Crimson Tide now owned the Premises and demanded rent payments. See Record Document 6 at 9. On October 26, 2020, Affordable executed three contracts with Kennedy PDLLC: (1) an Equipment Sale and Leaseback Agreement; (2) a Secured Promissory Note; and (3) an Assignment of Lease. See Record Document 45-1 at 9-10. Two days later, on October 28, 2020, Affordable notified Martin PDC of material breaches of the MSA.[2] See Record Document 44-1 at 6. On November 29, 2020, Affordable sent a letter to Martin notifying it that the MSA was terminated and that the termination of the MSA resulted in the termination of the Sublease, so Martin PDC no longer had the right to possess the Premises. See id. at 7. On November 30, 2020, Affordable states that it received notice that the exterior signage had been replaced with signage for a new business named "Martin Dentures and Implants." See id.

On December 1, 2020, Affordable instituted a summary proceeding by filing a Petition and Rule for Eviction in the First Judicial District for the Parish of Caddo, State of Louisiana (hereinafter referred to as the "Eviction Proceedings"). See id. at 8. Kennedy PDLLC joined in the matter as a Plaintiff, asserting its rights as owner of the equipment at issue and as assignee of rights in the Sublease at issue. See id. The state court denied the request for eviction, finding that certain steps for Martin PDC to invoke and attempt to

---

[2] These "material breaches" are being arbitrated pursuant to the arbitration provision of the MSA and are thus outside the scope of this litigation.

complete an option in the Sublease had not been fulfilled and eviction could not occur until that process, i.e., the option process, had been completed. See id. That decision was affirmed by the Louisiana Court of Appeals for the Second Circuit. See id. The Louisiana Supreme Court denied the *Writ of Certiorari*. See Record Document 65.

Martin PDC filed the instant suit in the First Judicial District for the Parish of Caddo on March 2, 2021, seeking a declaratory judgment and injunctive relief under Section 17 of the Sublease. See Record Document 1-1 at 1. Defendants removed the suit to this Court. See Record Document 1. In their Answer, Defendants grouped together their counterclaims against Martin PDC and third-party demands against Crimson Tide. See Record Document 6 at 6. Both parties have filed the instant dispositive motions, which the Court deems are cross motions for summary judgment on the claim for declaratory judgment relating to the Sublease, namely Section 17.

## LAW AND ANALYSIS

### I.     Legal Standards

#### a.  Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). A court may consider pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits when determining whether summary judgment is appropriate. See Fed. R. Civ. P. 56(c).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993).

### b.  Contractual Interpretation under the Louisiana Civil Code

"Contracts have the effect of law for the parties..." La. C.C. art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. C.C. art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "In case of doubt that cannot otherwise be resolved, a provision in a contract must be interpreted against the party who furnished its text. A

contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La. C.C. art. 2056. "In case of doubt that cannot otherwise be resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation. Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor." La. C.C. art. 2057.

## II. Analysis

### a. Cross Motions for Summary Judgment Seeking Declaratory Judgment

Both Martin PDC and Affordable assert that they are entitled to summary judgment on the issue of declaratory relief pursuant to Section 17 of the Sublease. The Court finds this issue dictates two separate analyses: first, whether Section 17 of the Sublease is a valid contractual option and second, whether Martin PDC validly exercised this option.

### i. Whether Section 17 of the Sublease is a Valid Option

Affordable states in its Motion for Partial Summary Judgment that Section 17 is "unenforceable and has no effect under Louisiana law because it is too vague and lacks specificity as the key terms[3] are undefined." Record Document 44-1 at 12-13. Specifically, Defendants argue that Section 17 lacks a price and therefore cannot be a valid option. See id. Plaintiff, in its opposition, argues that Section 17 is a valid and enforceable option agreement. See Record Document 41 at 14-18.

---

[3] These "key terms" are "necessary or prudent," "fair market value," and "book value." See Record Document 44-1 at 14.

"An option is a contract whereby the parties agree that the offeror is bound by his offer for a specified period of time and that the offeree may accept within that time." La. C.C. art. 1933. "An option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time. An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates." La. C.C. art. 2620.  "An option is an elective right that, when exercised, ripens into a valid contract. It therefore must be specific as to the thing, the price and the terms, as provided in La. C.C. art. 2462. Where any of these elements are lacking there is no contract between the parties." Pelican Pub. Co. v. Wilson, 626 So.2d 721, 723 (La. App. 5th Cir. 1993) (citing McMikle v. O'Neal, 207 So. 2d 922 (La. App. 2d Cir. 1968)). "The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid." La. C.C. art. 2462.

Defendants cite two main cases to bolster their argument that the option is invalid as a matter of law. See Record Document 44-1 at 13-14. First, Defendants cite Lake v. Le Jeune, 74 So. 2d 899 (La. 1954), for the proposition that Louisiana courts have "consistently found" that options which fail to clearly state a price are void and unenforceable. However, the facts of Lake, namely the contractual provisions, are distinguishable from the facts before this Court. In Lake, the option at issue provided:

> It is further understood and agreed that as a part of the consideration of this lease, the lessor grants unto the lessees herein first option to purchase and acquire said leased property should lessor wish to sell same, and that, at the death of lessor, the option is granted lessees the right to purchase said leased premises, the price both hereinabove and at the death of lessor of said leased premises is to be set and fixed by two appraisers of any local homestead association or of any banking institution.

74 So. 2d at 899. The lessees attempted to exercise this option upon the death of the lessor and filed suit against the lessor's heirs when they failed to accept the lessees' offer and instead sold the property to another party. See id. at 900. The court found the language of the option failed to state which party must appoint the appraisers and whether the contract allowed a party to refuse to appoint the appraisers. The court held, "where the price of a sale is to be determined and fixed in the future by experts to be named by the parties, as here, any one of the latter has the power to refuse to appoint; and the result of the arrangement is an uncertainty of price and a consequent nullification of the contract." Id. at 902.

The Court finds this argument unpersuasive. The language of Section 17 differs, in that it specifies which party must appoint the appraiser to determine the price. Section 17(d) specifically provides, "An appraiser *selected by Landlord [Affordable] shall* determine fair market value, and Tenant [Martin PDC] *shall* reimburse Landlord for such appraiser's cost." Record Document 1-1 at 15 (emphasis added). As stated above, the contract has the effect of law for the parties. Unlike the contract in Lake, the contract between Martin PDC and Affordable leaves no ambiguity as to which party must select the appraiser. The contract does not give Affordable discretion to refuse to appoint an appraiser. As Art. 2046 provides, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The Court finds that the language in Section 17(d) is clear and explicit. The parties intended that Affordable would appoint an appraiser to determine the price to be paid and Martin PDC would bear the cost of that appraiser.

Even more than that, to hold that a price was not determinable by the language of

Section 17(d) would lead to absurd consequences. Section 17(d) gives a clear measure

for the price to be determined:

> (d) Upon termination of the Lease, Tenant must pay to Landlord, in cash or certified funds, the sum of the following: (i) the fair market value siting and development services related to the Premises provide by Landlord that have not been paid by Tenant, *which value is hereby agreed in good faith to be $50,000*, *plus* (ii) the greater of the fair market value or book value of the Landlord's interest in the Premises (including fixtures) (but in no event greater than the acquisition costs), *plus* (iii) the greater of the fair market value or book value (but in no event greater than the acquisition cots) of the Landlord's interest in the equipment located at the Premises…

Record Document 1-1 at 14-15 (emphasis added). This language indicates to the Court

that the parties fixed a price in a method that made the sum determinable through the

method articulated in Section 17(d). To hold otherwise would be to construe the contract

against the canons of contract interpretation.

This reasoning is in line with the second case cited by Defendants, T.B. Guillory,

Inc. v. N. Am. Gaming Ent. Corp., 741 So. 2d 44 (La. App. 3d Cir. 1999), writ denied, 740

So. 2d 618. In that case, the Louisiana Third Circuit held that an option was unenforceable

for failing to give a determinable price. See id. The option that formed the basis of the

dispute read:

> Provided that Lessee is not in default in the performance of this lease, Lessee shall have the option to renew the Lease for three (3) additional five (5) year terms commencing at the expiration of the initial lease term or any renewal term. All terms and conditions of the lease shall apply during any renewal term except that the monthly percentage due Lessor shall be negotiable. The option shall be exercised by written notice given to Lessor not less than ninety (90) days prior to the expiration of the initial lease term or any renewal term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

Id. at 45. The court explained that although the notice to exercise the option was timely provided, the parties failed to reach an agreement concerning the rent during the renewal term. See id. The trial court held a bench trial on the limited issues of whether the option was valid and whether the lessee was in default, ultimately finding that the option was unenforceable because it lacked a determinate price. See id. In affirming this holding, the Third Circuit noted the parties' constant disagreements during negotiations of the lease, their inability to agree on a price, their lack of prior dealings, and the fact that the option left price negotiations entirely within the control of the parties. See id. at 47. The court also cited the Louisiana Supreme Court's guidance on the issue:

> What is essential is that the parties should have bound themselves in such way that *the price may be thereafter determined as a mere consequence of the consent given by them, without any new act of volition on their part*… [so long as] *it would no longer be within the power of the parties to prevent the fixing of the price*.

Id. (emphasis in original) (quoting Louis Werner Sawmill Co. v. O'Shee, 35 So. 919, 921 (1904)) (internal citations omitted).

The Court finds the facts in the instant case readily distinguishable. Unlike the parties in T.B. Guillory, Martin PDC and Affordable have a twenty-year history of dealings and multiple contracts between the parties. In addition, as detailed above, Section 17(d) reveals that the price would be determined as a mere consequence and that both Martin PDC and Affordable consented to Affordable appointing an appraiser to determine the price pursuant to the terms of Section 17(d). The parties, pursuant to the contract, no longer had the power to prevent the fixing of the price if Martin PDC chose to exercise the option. Thus, the Court finds that Section 17(d) contains a price that is determinable and therefore Section 17 is not void for failure to give a price.

Affordable next argues that Section 17 is void because key terms are undefined. These key terms are "fair market value," "book value," and "necessary and prudent." See Record Document 44-1 at 14. Noticeably lacking from this argument is any case in which any Louisiana court has found that failure to define these terms within the agreement nullifies the option. This Court is bound by the Civil Code, which specifically provides that "the words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." Art. 2047; see also Olympia Minerals, LLC v. HS Resources, Inc., 171 So.3d 878 (La. 2014). Indeed, even the Civil Code itself relies on the phrase "fair market value" without defining the term to Affordable's standards. See, e.g., La. C.C. art. 2589 (providing for rescission for lesion when an immovable is sold for less than one half the fair market value of the immovable). As such, the Court finds that the generally prevailing meaning of these terms is sufficient, and the Court refuses to find the option unenforceable for failure to define these terms.

Therefore, the Court finds that the option provided for in Section 17 is valid and enforceable; Affordable's Motion for Partial Summary Judgment asserting that Section 17 is not an enforceable option is **DENIED**.

### ii.  Whether Martin PDC Validly Exercised Its Option

Martin PDC seeks summary judgment declaring that it has taken all necessary steps to comply with its requirements under Section 17. See Record Document 45-1 at 16. Affordable likewise argues that it is entitled to summary judgment declaring that Affordable made the good faith determination, pursuant to Section 17(b) and 17(c), that no documents would be necessary or prudent to satisfy its obligation because Kennedy

PDLLC would not allow Martin PDC to acquire Affordable's interest in the equipment (thus rendering its performance impossible). See Record Document 44-1 at 15.

A study of this record confirms the fact that there is categorical disagreement on crucial factual issues relating to the exercise of Section 17. This disagreement can only be resolved by the trier of fact making credibility determinations, which makes this matter inappropriate for summary judgment. As such, both motions for summary judgment are **DENIED** on the issue of whether the parties complied with their obligations under Section 17.

### b.  The Prime Lease

Affordable seeks summary judgment declaring that the Prime Lease is still ongoing and has not been breached or terminated. See Record Document 44. Martin PDC states in its Motion for Summary Judgment that "Plaintiffs do not dispute that the Prime Lease is still ongoing..." Record Document 45-1 at 21.

Based on Plaintiff's assertion, the Court finds there is no genuine issue as to whether the Prime Lease is still ongoing. Therefore, Affordable's motion is **GRANTED** to this limited extent.

### c.  *Res Judicata* and Collateral Estoppel

In its Motion for Summary Judgment as to all claims, counterclaims, and third-party claims/demands, Martin PDC argues that many of Affordable's counterclaims and third-party demands are barred by issue preclusion, or collateral estoppel. See Record Document 45-1 at 18. Affordable opposes the application of issue preclusion/collateral estoppel, discussing the difference between a summary proceeding and an ordinary proceeding. See Record Document 49 at 18-27.

When giving preclusive effect to a state court judgment, this Court must apply the law of the state that issued the judgment. See In re Keaty, 397 F.3d 264, 270 (5th Cir. 2005). The Eviction Proceeding was brought in a Louisiana state court, thus, Louisiana law applies. Under Louisiana law, *res judicata* is both an issue and claim preclusion device which prohibits relitigation of matters which were litigated or could have been litigated in a prior suit. See Berthelot v. Brinkmann, 974 So. 2d 18, 21 (La. App. 2d Cir. 2007). The Fifth Circuit has noted:

> The requirements for issue preclusion under Louisiana state law are identical to those recognized by the Fifth Circuit: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment."

In re Keaty, 397 at 270-71.

In Graci v. Gasper John Palazzo, Jr., LLC, 30 So. 3d 915 (La. App. 5th Cir. 2009), writ denied, 31 So. 3d 394, the Louisiana Fifth Circuit reversed a trial court's granting of partial summary judgment based on the argument of *res judicata*. There, the plaintiffs presented their claims as defenses during the eviction proceeding and later filed suit to bring their claims in an ordinary proceeding. See id. at 918. The court explained that claims for damages and mitigation could not be brought in a summary eviction proceeding because the claims must be adjudicated in an ordinary proceeding. See id.

Martin PDC argues that Graci is inapplicable, as it relies on the doctrine *res judicata* rather than on collateral estoppel. See Record Document 50 at 8. Martin PDC clarifies its argument, asserting that Defendants should be precluded from asserting causes of action in which "wrongful eviction" is an element because the Eviction Proceedings determined that Martin PDC was the correct possessor of the Dental Assets.

See id. In support of this argument, Martin PDC cites Hudson v. City of Bossier, 766 So. 2d 738, 743 (La. App. 2d Cir. 2000).

The Court is not persuaded that Affordable's counterclaims are barred by collateral estoppel. In the Eviction Proceedings, Martin PDC raised Section 17 as a defense to eviction and has now filed this suit seeking to enforce its purported rights under Section 17 of the Sublease. To hold that Affordable cannot, now, assert counterclaims against Martin PDC and third-party demands against Crimson Tide (an entity not party to the Eviction Proceedings) simply because Dr. Martin is the only member of Crimson Tide would be to deprive Affordable of the right to litigate its claims. Even the Hudson court noted, "the opportunity to be heard is an essential requisite of due process of law in judicial proceedings." See id.

> The Summary Eviction Proceedings Judgment reads as follows:
>
> > IT ORDERED [sic], ADJUDGED, AND DECREED that Defendant's Exception of No Right of Action is GRANTED as to Affordable Care, LLC;
> > IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs' request for eviction is DENIED;
> > IT IS FURTHER ORDERED, ADJUGED, AND DECREED that Plaintiffs are taxed with Defendant's costs incurred in this matter, in the amount of Two Hundred Sixty Three Dollars and Eighty Cents ($263.80).

Record Document 45-21; see also Record Document 49 at 20. The Court cannot hold that this language denotes full litigation of a counterclaim related to Affordable's wrongful eviction. Indeed, even the limited transcripts that the Court has reviewed (Record Documents 45-19 and 45-20) reveal that the issue of wrongful eviction has not been "actually litigated" as required to find the argument is barred by collateral estoppel. Therefore, the Court finds that Affordable's counterclaims and third-party demands are not barred by collateral estoppel. Accordingly, Martin PDC's Motion for Summary

Judgment seeking the application of issue preclusion/collateral estoppel must be **DENIED** as a matter of law.

### d.  Remaining Claims, Counterclaims, and Third-Party Demands

Martin PDC seeks summary judgment that there is no genuine dispute as to any material fact related to the remaining claims, counterclaims, and third-party demands and Martin PDC is entitled to judgment as a matter of law. See Record Document 45-1 at 24-29. According to Martin PDC's Motion for Summary Judgment, the remaining counterclaims and third-party demands include declaratory relief, Crimson Tide's breach of the Prime Lease, conversion, unjust enrichment, property damage, and unfair trade practices. See id.

The Civil Code states that contracts must be performed in good faith. See La. C.C. art. 1983. "Summary judgment is generally disfavored on issues of a party's state of mind, such as good faith." Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265-66 & n. 8. Courts within the Fifth Circuit generally reject summary judgment in cases where motive, intent, subjective feelings and reactions, consciousness and conscience are to be searched, and examination and cross-examination are necessary instruments in obtaining the truth. See Jones v. Borden Co., 430 F.2d 568, 574 (5th Cir. 1970).

While a review of the record shows that the dates on which certain events occurred are not in dispute, it is clear to the Court that there are genuine issues of material fact surrounding each party's subjective motivations that accompanied the objective actions, that is, the motive and intent behind the parties' timing of certain events. Each party's brief contains clear factual gaps, and each party has omitted facts that might put their respective motivations in a bad light, perhaps for the purpose of attempting to frame

factual disputes as legal issues in order to prevail on summary judgment. The Court finds these arguments unpersuasive and inappropriate for consideration at the summary judgment stage. Whether the parties acted in good faith is an issue that is best reserved for the finder of fact to decide, and it would be inappropriate for the Court to make such a determination at the summary judgment stage. Therefore, summary judgment is **DENIED** as to all remaining claims, counterclaims, and third-party demands.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (Record Document 44) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** on the limited finding that the Prime Lease is still ongoing and has not been breached or terminated. It is **DENIED** in all other regards.

Plaintiff's Motion for Summary Judgment (Record Document 45) is **DENIED**.

An order consistent with the terms of this memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana on this 28th day of November, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT