# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JEFFERY LEE MARTIN | CIVIL ACTION NO. 21-0585 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| AFFORDABLE CARE, LLC, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a Motion to Disqualify Plaintiffs' Counsel (Record Document 88) filed by Defendants Affordable Care, LLC ("Affordable") and Thomas Kennedy, DDS of Louisiana II, A Professional Dental LLC ("Kennedy PDLLC") (collectively referred to as "Defendants"). Plaintiff Jeffery Lee Martin, DDS, A Professional Dental Corporation ("Martin PDC")[1] and Third-Party Defendant Crimson Tide Investments, LLC ("Crimson Tide") (collectively, "Plaintiffs") opposed the motion. See Record Document 90. Defendants replied. See Record Document 93. The Court held an evidentiary hearing on the Motion and ordered post-hearing briefing. See Record Documents 97, 98 (Minutes of Court) and 105, 106 (Supplemental Briefs). The Court, now having thoroughly considered the arguments set forth in the briefs, as well as the evidence and arguments submitted at the hearing, issues this memorandum ruling. For the reasons that follow, the Motion to Disqualify Plaintiffs' Counsel is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of a contractual relationship between Martin PDC and Affordable and specifically relates to a Prime Lease and a Sublease executed on a dental

---

[1] For purposes of this ruling, any reference to Dr. Jefferey Lee Martin in his individual capacity will be referenced as "Dr. Martin" to delineate between Dr. Martin's dentistry practice (Martin PDC) and Dr. Martin himself.

office and lab located on Ashley Ridge Blvd. in Shreveport, Louisiana ("the Premises").[2] In 2003, Martin PDC and Affordable executed three agreements—(1) an Agreement to Provide Management Services ("the MSA"); (2) an Agreement to Provide Dental Laboratory Services ("the ADDL"); and (3) a sublease, in which Affordable, Inc.[3] subleased the Premises to Martin PDC ("the Sublease")—and operated amicably pursuant to these agreements until August 2020. See Record Document 71 at 3-4. However, on August 31, 2020, Dr. Martin, through his entity Crimson Tide, purchased the Premises from Affordable's landlord. See id. at 4. That same day, Martin PDC sent notice to Affordable of its intent to invoke the option agreement contained in Section 17 of the Sublease to acquire Affordable's interest in the Premises. See id. at 5. Defendants state that on October 20, 2020, Dr. Martin advised Affordable that Crimson Tide now owned the Premises and demanded rent payments. See id.

On October 26, 2020, Affordable executed three contracts with Kennedy PDLLC: (1) an Equipment Sale and Leaseback Agreement; (2) a Secured Promissory Note; and (3) an Assignment of Lease. See id. On October 28, 2020, Affordable notified Martin PDC of certain material breaches of the MSA. See id. Then, on November 29, 2020, Affordable sent a letter to Martin PDC notifying it that the MSA was terminated and that the termination of the MSA resulted in the termination of the Sublease, so Martin PDC no longer had the right to possess the Premises. See id.

---

[2] The history between the parties and the nature of the parties' relationships were discussed at-length in the Court's Memorandum Ruling issued on November 28, 2022. See Record Document 71. However, a brief recitation of how the parties came to be in the current litigation is necessary to understand facts at-issue in the instant Motion.

[3] Affordable, Inc. is Affordable's predecessor-in-interest.

In December 2020, Affordable instituted a summary proceeding against Martin PDC by filing a Petition and Rule for Eviction in the First Judicial District for the Parish of Caddo, State of Louisiana. See id. The state court denied the request for eviction, and the decision was affirmed by the Louisiana Court of Appeals for the Second Circuit. See id. at 6. The Louisiana Supreme Court denied *cert*. See id.

Affordable also instituted an arbitration action based on Martin PDC's alleged breaches of the MSA. See Record Document 47-9. Currently, to this Court's knowledge, the arbitration action is still ongoing, but the Sublease is not subject to the Arbitration Agreement contained in the MSA. Martin PDC filed the instant suit in the First Judicial District for the Parish of Caddo on March 2, 2021, seeking declaratory judgment and injunctive relief under Section 17 of the Sublease. See Record Document 1-1 at 1. Defendants removed the suit to this Court. See Record Document 1. Both the arbitration proceedings and this litigation have protective orders in the record.

Currently, Martin PDC occupies the Premises and has contracted with Edge Dental Laboratory Solutions, LLC ("Edge Dental") to run its dental lab. See Record Document 102 at 79; see also Record Document 106 at 1. On August 11, 2022, Affordable filed suit against Edge Dental, Laura Jacobs, and Michael Thomas ("the Edge Defendants") alleging, *inter alia*, misappropriation of trade secrets ("the Edge Suit"). See Record Document 100-2 at 21. The law firm Downer, Jones, Marino & Wilhite, LLC ("the Downer Firm," "the Downer Attorneys," and/or "Plaintiffs' Counsel") represents both Plaintiffs in this matter as well as Edge Dental in the Edge Suit. See Record Document 106 at 1. The Downer Attorneys filed a Notice of Appearance in the Edge Suit on August 17, 2022.

3

In its Motion, Affordable states that counsel for Affordable contacted the Downer Attorneys about a conflict of interest and the protective orders. See Record Document 88-1 at 5. Affordable also states that the conflict issue arose again during a telephone hearing with the arbitrator in the arbitration proceeding in early December 2022. See id. at 6. The parties in this suit participated in a settlement conference on December 12, 2022. Affordable states that,

> [d]uring the course of the conference, it became clear that Affordable and Kennedy [PDLLC] could not explore alternative settlement options with Martin PDC and Crimson Tide because the Downer Attorneys' representation of Edge [Dental] prevented any such discussions. Any potential alternative settlement option that could have a negative impact on Edge [Dental] was preemptively off the table due to the Downer Attorneys' interest in the Edge suit.

Id. at 7. This matter was set for trial on January 9, 2023. See Record Document 67. Defendants filed the instant Motion on December 16, 2022. See Record Document 88.

After the Motion was filed, the Court held a telephone status conference with the parties during which the Court upset the trial date and set the Motion for an evidentiary hearing. See Record Document 91. The Court also ordered the parties to cease trial preparations until the Motion could be adjudicated. See id. The Court held a hearing on the Motion on January 11-12, 2023. See Record Document 97 and 98. The parties then submitted post-hearing memoranda. See Record Documents 105 and 106. As such, the Motion is now ripe for decision.

## LAW AND ANALYSIS

### I.  Legal Standard

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." In re Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992). Thus, "federal courts may adopt state or [national]

4

rules as their ethical standards, but whether and how these rules are to be applied are questions of federal rule." In re Am. Airlines, 972 F.2d 605, 610 (5th Cir. 1992). "When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" In re ProEducation Int'l, Inc., 587 F.3d 296, 299 (5th Cir. 2009) (quoting F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1311 (5th Cir. 1995)).

This Court has adopted the Rules of Professional Conduct of the Louisiana Bar Association, as amended by the Louisiana Supreme Court. See Local Rule 83.2.4. A reviewing court also considers the motion governed by the ethical rules announced by the national profession. See In re ProEducation, 587 F.3d at 299. The Fifth Circuit has recognized the ABA Model Rules of Professional Conduct as the national standard to consider in reviewing motions to disqualify. See id. Therefore, most courts consider the state rules and the Model Rules in tandem. See, e.g., Waneck v. CSX Corp., 2017 WL 11695758 (S.D. Miss. 2017).

Application of the disqualification rule "requires a balancing of the likelihood of public suspicion against the interest in retaining counsel of one's choice." Cossette v. Country Style Donuts, Inc., 647 F.2d 526, 530 (5th Cir. 1981), disavowed on other grounds, Gibbs v. Paluk, 742 F.2d 181, 185 (5th Cir. 1984). "[N]otwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification, particularly the disqualification of an entire firm, is a sanction that must not be imposed cavalierly." F.D.I.C., 50 F.3d at 1316.

II. Analysis

Several issues arise in the context of analysis on a Motion to Disqualify. These issues include (i) whether the moving party has standing to bring the motion, (ii) whether

5

the motion is timely, (iii) whether a conflict exists, and (iv) whether the conflict (if one exists) can be waived. These issues will guide the Court's analysis, bearing in mind that the party seeking disqualification bears the ultimate burden of proof. See In re Am. Airlines, 972 F.2d at 614.

### a. Standing

Plaintiffs challenge Affordable's standing to bring this Motion. Affordable counters that a motion to disqualify counsel is the proper method for a party-litigant to bring opposing counsel's conflict of interest to the Court's attention. See Record Document 88-1 at 10. Plaintiffs, however, assert that Affordable filed this motion because Dr. Martin chose not to settle at the settlement conference held on December 12, 2022, and instead opted to take the case to trial. See Record Document 90 at 3. Thus, Plaintiffs argue, Affordable has "dubious" standing to bring the motion. See id. at 1, 2.

The Fifth Circuit's guidance in In re American Airlines is useful here, as the Fifth Circuit has "squarely rejected" a hands-off approach to ethical issues:

> [W]e have emphasized that "[a] motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." We recognize of course that disqualification motions may be used as "procedural weapons" to advance purely tactical purposes. But we do not believe that a priori assumptions concerning the motivations underlying disqualification motions in general justify a more relaxed ethical rule.

972 F.2d at 611 (internal citations omitted). Additionally, the Fifth Circuit permits standing for third parties to raise conflicts premised on the well-settled principle that district courts have the inherent duty and responsibility to supervise the conduct of attorneys who appear before them. See, e.g., Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp., 563 F.2d 671, 674 (5th Cir. 1977) (per curiam) and In re Gopman, 531 F.2d 262, 264 (5th Cir. 1976). When the Court is informed of a potentially conflicted status of an attorney,

6

the Court is obligated to undertake its supervisory role and consider the motion on the merits.

The Court finds that Affordable has standing to bring the motion. Affordable is seeking disqualification based on parties that are presently represented by a single firm; the parties, however, are Plaintiffs in this case (Martin PDC and Crimson Tide) and Defendants in a separate suit before a state district court (Edge Dental). While the Court understands Plaintiffs' argument that the Motion was filed as a "procedural weapon," the Court is nonetheless obligated to consider the Motion on the merits. Because a Motion to Disqualify Counsel is a proper vehicle through which opposing counsel may raise concerns about a conflict of interest, Fifth Circuit precedent confers standing upon Affordable to bring the Motion.

### b. Timeliness

Plaintiffs also challenge the Motion as untimely. Plaintiffs assert that Affordable does not adequately explain why, after first learning of the alleged conflict in August 2022, it waited until December to file this Motion. See Record Document 90 at 8. Plaintiffs speculate that Affordable "held this motion in reserve until after the settlement conference in an attempt to disrupt Plaintiffs' counsel's preparations for the upcoming trial." See id. Affordable concedes that the timing is "nothing less than undesirable," but nevertheless asserts that the issue was not ripe until "it became apparent that the issue was affecting the outcome of this case." Record Document 88-1 at 7.

"A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of

7

his choice after substantial preparation of the case has been completed." King v. Martin, No. 10-CV-1774, 2012 WL 4959485 at *3 (W.D. La. 2012) (Hornsby, M.J.) (citing Hertz Corp. v. Caulfield, 1992 WL 53610 (E.D. La. 1992)). The Court agrees with Affordable that the timing of this Motion is nothing less than undesirable. This is especially true, given that the Court was not made aware of any conflict issues until less than a month before trial was set to begin. However, as the Court noted earlier, when the Court is alerted to a potentially conflicted attorney, the Court has an obligation to consider the motion on the merits. As such, the Court will not dispose of the Motion on the basis of its "undesirable" timing.

### c. Whether a Conflict of Interest Exists

The Court now turns to the issue of whether the Downer Attorneys' representation both of Plaintiffs in this case and the Edge Defendants in the state court lawsuit creates a conflict of interest. Importantly, "conflicts of interests are best-settled between a client and his attorney, and the party moving for disqualification must show an actual conflict—not some hypothetical one." King, 2012 WL at *3 (citing F.D.I.C., 50 F.3d at 1313-14). Affordable argues that the Downer Attorneys' concurrent representation is unethical under Louisiana Rule of Professional Conduct 1.7. Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

8

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

The Louisiana Rule is identical to the ABA Model Rule of Professional Conduct 1.7. [4]

In support of its contention that Plaintiffs' counsel has a non-consentable conflict of interest, Affordable cites <u>Waneck v. CSX Corp.</u>, No. Civ. A. 1:17-cv-106, 2017 WL 11695758 (S.D. Miss. 2017). In <u>Waneck</u>, the plaintiffs' attorney, Pottroff, filed suit against defendants after a train crashed into a charter bus in Biloxi, MS. <u>See id.</u> at *1. During the course of Pottroff's investigation, he met with certain city officials to discuss the crash. <u>See id.</u> While meeting with those officials, the city attorney for Biloxi asked to retain Pottroff. <u>See id.</u> Pottroff confirmed both with Plaintiffs and the City their desire to be represented by him even with his representation of the other. <u>See id.</u> at *2. Both parties provided informed consent to the representation and Plaintiffs confirmed that they had no desire to make any claim against the City. <u>See id.</u>

Despite the informed consent provided by the parties, defense counsel filed a motion to disqualify Pottroff, stating that his representation of the City materially limited his representation of the plaintiffs. <u>See id.</u> According to defense counsel, the plaintiffs failed to pursue a negligence claim against the City because of Pottroff's representation of the City. <u>See id.</u> Pottroff countered this argument, stating that Plaintiffs did not have a

---

[4] The rule delineates two separate types of conflicts: (1) a "direct adversity conflict" which cannot be waived, and (2) a "material limitation conflict" which may be waived pursuant to the requirements of Rule 1.7(b).

9

viable claim against the City, and even suggested that their interests were aligned with the City's. See id.

The district court disagreed and granted the motion to disqualify. See id. at *5-6. Looking at the substantive law of the case (Mississippi tort and indemnification law), the court recognized a scenario in which the City could be legally obligated to indemnify the defendants, which would make the City's interests adverse to Plaintiffs' interests. See id. at *6. The court found Pottroff's loyalty to Plaintiffs became impaired the moment he agreed to represent the City because he could no longer consider, recommend, or carry out any claims Plaintiffs may have against the City because of his responsibilities to the City. See id. at *7. Thus, the court found Pottroff's concurrent representation posed a conflict of interest as contemplated by Model Rule 1.7(a)(2). See id.

The Court finds the facts of the instant matter readily distinguishable from the facts of Waneck. The Waneck Court, after looking at Mississippi tort and indemnification law, envisaged a situation wherein the City could be directly adverse to Plaintiffs, and thus, found that Pottroff's representation of the Plaintiffs was materially limited by his loyalty to the City. Here, however, Affordable has not provided the Court with a cognizable situation wherein Martin PDC, Crimson Tide, or Dr. Martin would be directly adverse to Edge Dental or the other Edge Defendants. Affordable spells out the following conflicts, which it asserts constitute actual conflicts:

- The Downer Attorneys' representation of Plaintiffs is materially limited because the Downer Attorneys have a material interest in declining any settlement offers that are to the detriment of Edge, the Downer Attorneys' current client. Plaintiffs could not consider all settlement offers during the settlement conference because of this conflict. Many alternate settlement offers that Defendants considered involved Edge leaving the Premises/Martin PDC disaffiliating from Edge, but those offers were nonstarters due to the Downer Attorneys' current conflict of interest.

- The Downer Attorneys' representation of Crimson Tide is materially limited because, again, the Downer Attorneys have a material interest in avoiding any course of action to the detriment of Edge. A neutral attorney would advise Crimson Tide, as landlord under the Prime Lease, to restore Defendants to possession of the Premises after the Court's determination that the Prime Lease is active and not been terminated. Such an action would stem Defendants' damages for disturbance of their peaceful possession and thereby limit Crimson Tide's liability for those damages. However, the Downer Attorneys are not neutral and would not suggest any course of action that would involve evicting Edge from the Premises.

- The Downer Attorneys' representation of Edge is materially limited because of the Downers Attorneys' representation of Martin PDC and Crimson Tide. A neutral attorney would advise Edge to vacate the Premises now that it has been determined that the Prime Lease is active and has not been terminated and state that Martin PDC had represented to Edge that Martin PDC had the right to provide Edge with access to the Premises and laboratory. Instead, because of the conflict of interest due to also representing Martin PDC, counsel will not advise Edge to take action adverse to Martin PDC.

Record Document 93 at 4-5. At the hearing, Plaintiffs established that Martin PDC's business relationship with Edge Dental is a "fee-for-services," "handshake agreement." See Record Document 102 at 45, 80. Unlike in Waneck, Affordable has not provided the Court with any scenario in which Martin PDC or Crimson Tide would be directly adverse to Edge Dental. To the contrary, the evidence presented at the hearing on the Motion shows the Martin PDC's interests, Crimson Tide's interests, and Edge Dental's interests are far from directly adverse and may even be aligned.

Moreover, the Court finds that Affordable's alleged conflicts of interest based on material limitations are speculative, based on a presumption that Affordable will prevail on both the merits of this case and the merits of the Edge Suit. These presumptions are erroneous for two main reasons. First, the merits of the Edge Suit are not before this Court and, therefore, this Court will not speculate as to the merits of either party's claims

in that suit; this Court cannot find grounds to disqualify counsel based on a suit that is not before it. Second, and more importantly, this Court will not afford Affordable (pun intended) the benefit of presuming Affordable will prevail. Affordable's argument essentially asks the Court to decide the merits of this case in its favor and then presume that Edge Dental and Martin PDC will somehow become directly adverse if Affordable were to prevail in this matter.

Affordable's argument solely focuses on Court's summary judgment ruling regarding the Prime Lease and wholly ignores the Court's summary judgment ruling regarding the Sublease. To clarify, the Court found that the Prime Lease is still ongoing because neither party disputed that fact. See Record Document 71 at 14. However, tantamount to that finding is the Court's finding that the option agreement contained in Section 17 of the Sublease is valid and enforceable. See id. at 13. In so finding, the Court denied Affordable's argument asserting that Section 17 was not enforceable. See id. Even further, the Court denied Affordable's request for a preliminary injunction because Affordable could not establish substantial likelihood of success on the merits. See Record Document 73 at 7 (Memorandum Ruling denying a preliminary injunction because Affordable failed to show that they are substantially likely to succeed on their claim that Martin PDC did not validly exercise Section 17 of the Sublease).

Affordable argues that the validity of the Prime Lease necessitates Crimson Tide evicting Edge Dental from the Premises. See Record Document 105 at 4. As stated earlier, this ignores the possibility that Martin PDC prevails on its claim for declaratory relief. However, even assuming Affordable does prevail on the merits, Crimson Tide would have to evict Martin PDC from the Premises, which would cause Martin PDC to

12

potentially terminate its fee-for-services handshake agreement with Edge Dental. Even then, Affordable has not stated any cognizable claims that either Martin PDC or Edge Dental would assert against the other. This is dissimilar to Waneck, where the substantive law of the case created a situation where the City would have to indemnify the defendants and created a negligence claim that Plaintiffs could pursue against the City. Here, Affordable has not pointed the Court to any substantive law that would give Edge Dental an actionable claim against either Martin PDC or Crimson Tide, especially based on the parties' handshake agreement. The testimony of Edge Dental's corporate representative proves that Edge Dental does not have any agreement with either Martin PDC or Crimson Tide to indemnify Edge Dental or share legal costs between the entities. With such testimony in the record, the Court cannot envisage a scenario where Martin PDC or Crimson Tide are directly adverse to Edge Dental.

The crux of Affordable's argument is that Affordable believes Plaintiffs will not consider any settlement offers that are adverse to Edge Dental. However, the evidence at the hearing, as well as the parties' memoranda, reveal that no such offers were ever communicated to Plaintiffs. Affordable's corporate representative stated that Affordable did not convey any settlement offers to Plaintiffs that involved any terms relating to Edge Dental. See Record Document 102 at 97, 100-101, 105. Based on the evidence in the record, the Court cannot conclude that the uncommunicated offers would make Plaintiffs and Edge Dental directly adverse. Further, Affordable has not provided the Court with any case where a court disqualified counsel based on a client's rejection of an offer that was never communicated. Such a holding seems far-fetched to this Court.

The Court therefore relies on Magistrate Judge McClusky's finding that the parties participated in the settlement conference in good faith but were not able to reach a settlement. See Record Document 85.  The Court will not, now, revisit that finding and disqualify counsel based on offers that were never communicated.

Affordable next argues that the Downer Attorneys should be disqualified because they will inevitably breach the Protective Order in this case, which will give the appearance of impropriety. Plaintiffs counter that the Downer Attorneys' representation will not breach the Protective Order, nor should this warrant their disqualification from the case. While breach of a protective order may be grounds for "penalties for contempt," such a breach is not grounds for disqualifying an entire firm in this case. See Record Document 76 at 9. Even further, Affordable did not provide the Court with evidence that the Protective Order in this case had been breached by the Downer Attorneys.[5] Without any evidence that the Downer Attorneys actually breached the Protective Order, the Court will not deprive a litigant of his chosen counsel based solely on a hypothetical situation. Further, the Downer Attorneys confirmed at the hearing that the firm has a system for keeping information confidential and preventing the breach of a protective order in a particular matter. See Record Document 102 at 90-91.

If either party has evidence that the Protective Order has actually been breached, the Court will address such an issue when it is properly brought to the Court's attention. Until such time, the parties are to operate pursuant to the terms of the Protective Order.

---

[5] Affordable cites Hamilton v. City of Hayti, 2014 WL 7157329 (E.D. Mo. Dec. 15, 2014), to say that Affordable does not have to provide actual evidence of a breach. The Court, however, finds the facts of Hamilton to be distinguishable from the instant case.

In sum, the Court finds that Affordable has not met its burden to establish that the Downer Attorneys have either a direct adversity conflict or a material limitation conflict. Therefore, the Court finds that the Downer Attorneys do not have a concurrent conflict of interest.

### d. Whether Such Conflict (if any) Can Be and Has Properly Been Waived

Even if the Court were to find that the Downer Attorneys' representation of Plaintiffs and Edge Dental creates a material limitation conflict, the Court would still find that such conflict has been properly waived by the parties. A material limitation conflict is waivable pursuant to Rule 1.7(b). As stated earlier, this rule provides:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Louisiana R. of Prof'l Conduct. 1.7.

The Comments to ABA Model Rule of Professional Conduct 1.7 state that, "under paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation." Model Rules of Prof'l Conduct R. 1.7 cmt. 15. (citing Model Rules of Prof'l Conduct R. 1.1 (competence) and R. 1.3 (diligence)). Affordable asserts that the Downer Attorneys cannot reasonably conclude that the firm will provide competent and diligent representation, given that the Downer Attorneys' competing loyalties have already impeded settlement negotiations and because the Downer Attorneys cannot share certain

information with Edge Dental due to the Protective Order in this case. See Record Document 105 at 9. However, at the hearing, counsel for Plaintiffs testified that he believed the Downer Attorneys would be able to provide competent and diligent representation to each client. See Record Document 102 at 156.[6] Counsel also testified that no protected information from the arbitration or in this matter is needed to defend Edge Dental in the claims raised by Affordable. See Record Document 102 at 155. Based on the Court's earlier analysis regarding the settlement conference and the Protective Order, coupled with the testimony from the hearing, the Court finds that Affordable has not met its burden to establish that the Downer Attorneys' representation of both Plaintiffs and Edge Dental would be unreasonable.

Rule 1.7(b)(2) requires that the representation not be prohibited by law. The Comment to this subsection provides that the Court should look to guidance from state substantive law to determine if the representation is prohibited. See Model Rules of Prof'l Conduct R. 1.7 cmt. 16. Affordable did not provide the Court with any argument regarding this, nor is the Court aware of any cases or statutes that would prohibit the Downer Attorneys' representation of both Plaintiffs and Edge Dental. Therefore, this requirement is met.

Similarly, the requirement under Rule 1.7(b)(3) is satisfied. The Downer Attorneys' representation of both Plaintiffs and Edge Dental does not involve the assertion of a claim by one client against another client represented by the lawyer in either this suit or another tribunal.

---

[6] Q: ... [D]o you reasonably believe that you will be able to provide competent and diligent representation to each effective client?
A: I do.
Record Document 102 at 156, ln. 8-10.

Finally, Rule 1.7(b)(4) requires that each affected client give informed consent, confirmed in writing. In this case, the Downer Attorneys provided the Court with a Declaration of Dr. Martin, stating that Dr. Martin had the opportunity to consult with independent counsel, consider whether there are any actual or potential conflicts that would be detrimental to Dr. Martin, Crimson Tide, or Martin PDC, and that Dr. Martin has elected to keep the Downer Attorneys as his counsel. See Record Document 90-1 at 1-2. Additionally, the Downer Attorneys provided the Court with a Declaration from Michael Thomas, the CEO of Edge Dental. See Record Document 90-2. Michael Thomas's affidavit states that he had the opportunity to consult independent counsel and to consider whether there are any actual or potential conflicts that would be detrimental to Edge Dental, and that Edge Dental has elected to keep the Downer Attorneys as its counsel. See id. at 1-2. Further, at the hearing, both Dr. Martin and Michael Thomas testified that they have waived any potential conflicts and that they would like to keep the counsel of their choosing. See Record Document 102 at 124-26 (Dr. Martin) and 137-38 (Michael Thomas).

Despite having informed consent on the record, Affordable argues that the written consent occurred too late and that the consent was not informed. See Record Document 105 at 9. Affordable's argument that the written waiver came too late does not justify disqualification of a party's attorney. See King, 2012 WL 4959485 at *4 (citing Douglass v. Valteau, No. Civ. A. 05-662, 2005 WL 1431510 (E.D. La. June 9, 2005)). While the Downer Attorneys should have obtained the written waiver when the parties were asked to waive any potential conflicts, the fact that the Downer Attorneys cured this by later obtaining written consent satisfies this requirement. The Court finds that the Downer

Attorneys' disclosure of the potential conflicts and the later-obtained written consent is sufficient.

Affordable's argument that the consent was not informed because Dr. Martin and Michael Thomas did not *actually* speak with outside counsel likewise cannot justify disqualification. Based on the testimony at the hearing, the Court finds that Dr. Martin and Michael Thomas both reasonably understand the material risks that the waiver entails. Moreover, Rule 1.7 requires that the parties be afforded the opportunity to consult with outside counsel; it does not impose a requirement that the parties actually consult with outside counsel. Therefore, the Court finds the Downer Attorneys have met the requirements of Rule 1.7(b)(4) by obtaining informed consent to waive any potential conflicts.

Based on the foregoing analysis, the Court finds that each condition under Rule 1.7(b) has been met. The Downer Attorneys obviously believe they can provide competent and effective representation to Martin PDC, Crimson Tide, and Edge Dental; the representation is not prohibited by law; Martin PDC, Edge Dental, and Crimson Tide are not suing one another; and the declarations of the parties established that they were advised of the conflicts and waived them.

## CONCLUSION

For the reasons detailed above, the Court makes the following findings: Affordable has standing to bring the Motion to Disqualify; the Motion is timely; there is no concurrent conflict of interest between the Downer Attorneys' representation of Crimson Tide, Martin PDC, and Edge Dental; and, even if the Court were to find a conflict, that conflict has been properly waived by the parties.

Accordingly,

The Motion to Disqualify Plaintiffs' Counsel (Record Document 88) is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 31st day of July, 2023.

S.MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT